We'll start, therefore, right away with the first matter, Albano v. Amtrust Financial Services et al., 20-1643. I know that there are a number of lawyers who will be arguing, but we'll start with Mr. Love. Good morning, your honors, and may it please the court, Andrew Love for the appellants. This is an appeal of a dismissal of a complaint alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The false and misleading statements that issue for both claims against the Amtrust defendants are the misstated income-related metrics that required Amtrust to restate its financial results over a five-year period. The misstatements in this case do not involve subjective judgments such as estimates or projections. Rather, they stem from violation of objective accounting rules, rules Amtrust was required by GAAP to apply and that they failed to follow. I'd like to focus on one of the two accounting errors that led to the material misstatements, where Amtrust failed to apply the one accounting rule required by GAAP regarding the timing of recognizing revenue on extended warranty contracts. Amtrust admitted in a restatement that it had erroneously recognized revenue on these contracts at the time of sale rather than as they should have on a straight-line basis over the course of the contracts. As alleged, this was a straightforward violation of GAAP. The revenue recognition rule, 605-20, is the only applicable rule here and involves no subjective judgment. It states that revenue for extended warranty contracts must be deferred and recognized on a straight-line basis over the contract period. Consistent with this court's decision in fate, when a complaint alleges a material misstatement due to a GAAP violation, the question is whether the application of the rule is based on objective criteria or the exercise of judgment. And here, because the rule is based on an objective standard, the misstatement is one of fact, not opinion. The district court found subjectivity because of the existence of an exception to this rule. There's an exception that if sufficient historical evidence indicates costs under the contract are incurred other than on a straight-line basis, then they don't have to follow this rule. But Amtrust did not apply the exception. Nothing in the record suggests they even consider the exception. You mean the historical evidence exception? Correct. There's nothing in the record that they ever apply this exception or consider the exception. And so there was no subjective judgment involved, just because there happens to be an exception to this objective rule. In terms of evidence, why would there need to be evidence at this point? I mean, if the question is a facial one of the pleading, right? Correct. So if you point to someone failing to apply a rule that has various exceptions, and you don't allege that the, you know, I mean, did you allege that the exceptions didn't apply or that they clearly didn't apply? We allege, yes, that there's this objective rule and that the exception didn't apply. It was argued below. It's been briefed here. There's never been never a suggestion by defendants that this that they ever sought to apply this exception. But the point is that at the motion to dismiss stage and so we are to look at your allegations plus obviously the restatement, the other filings with the SEC. But is there an allegation that they did not rely on historical evidence that is they didn't rely on this particular exception? And so that only objective metrics could apply? I'm sure we have, Your Honor. I can't point you exactly to that in the record, but I'm going to get up on rebuttal. You've got rebuttal, so you can point us to that. Thank you. So, so this is this is not a case where the company is choosing between two appropriate gap rules. There's this there's this one rule. The exception did not did not apply. There's nothing in the record to suggest that it does. If there were two rules that applied, what would your view be? If there were two applicable rules and there was judgment involved in deciding between those two rules, then there may there may be, depending on the rules, a question of judgment. And is that dependent on whether you allege that there's a difference of judgment? If you just say there are two rules and we think it's completely obvious that one should only apply rule one, do you now win? It's just like by characterizing it as as something that's beyond doubt, it becomes a fact and not an opinion. It is a plausible inference at the pleading stage. We allege there is one rule for separate guidance providers. This is paragraph 120 J.A. 80 of the complaint that there is one rule that applies to separately priced extended warranty contracts. And other than what? So now I'm seeing the court look at the rule. Yes. And may I just say paragraph 121 of the complaint, we do say that the page, what page is J.A. 80. OK. Paragraph 121. You say the one exception does not apply. It's not applicable. And there's no other method allowable by gap. And paragraph 120, also on J.A. 80, there's only one rule that applies to separately priced extended warranty contracts. There's only one rule that involves the timing of recognizing revenue. They did not follow it. It's an objective rule. And therefore, the misstatement is a statement of fact. OK. You know, even if, I guess, I'd like to talk about, so even if this court deems this an opinion, and also this goes to the CNTR point with regard to the 10B claims, is that the SEC informed Warrantech, which is a company that Amtrust acquired, that it could no longer recognize revenue up front, that it was violating this rule, that it could no longer recognize it and had this warranty revenue, had to do so on a straight line basis. And this required Warrantech to restate its financial results in 2006. When Amtrust acquired Warrantech four years later, with the chairman and CEO of Warrantech becoming the chairman of the subsidiary that Amtrust acquired, they reverted back to the very accounting policy that the SEC had said they could not do, which is, again, violating this rule and applying the revenue up front as opposed to on a straight line basis. What is it that Judge Kaplan said? I mean, what is it exactly he got wrong, in your view? About this particular point? Yes. He said this was, well, this was ancient history. He said this was years ago. It was only four years ago. The restatement was in 2006. The Amtrust acquired Warrantech four years later. It's only a plausible inference, given the due diligence required by Amtrust when it acquired the company and the fact that the new chairman of the subsidiary was the chairman and CEO who signed up on their restatement, that they were very well aware that the SEC had already said you can't do it this way. And then Amtrust does it this way until they, too, have to file a restatement years later. So that, and defendants don't even argue that, they did this below. They argued that this was ancient history. Now, they don't say that they didn't know about the rule. They say the rule has changed. And that's justified their changing back to recognizing revenue up front. Did the rules change? There's nothing in the record that says the rule has changed. Is there anything in the record that says the rules stayed the same? Did you allege that the rules stayed the same? There's nothing in the record that talks about a rule change. But even if... No, no, no, I'm sorry. Is there anything in the record where you specifically allege that the rules stayed the same? I believe there's an allegation that nothing changed in terms of the business or the rules. That the rules did not change. Is there any reason we couldn't take judicial notice of the particular change that your friends on the other side are pointing out? Sure. I think, yes, you could, Your Honor. The problem is, even if there was a rule change, there's nothing in the record that shows that defendants relied on that rule change in order to change their accounting policies. We're at the pleading stage. And this is a fact question that they're raising by saying that not only is there a rule change, but that is the reason why we disregarded what the SEC said before. I see I'm out of time. Well, can you address some of the allegations or the issue related to BBO? Yes. So in BBO, what the district court got wrong, the district court found that there were misstated opinions when BBO 2013 audit opinion said they conducted audits in accordance with the PCAOB and that the audits provided a reasonable basis for their opinion. The district court found, yes, that in fact was misstated opinion, but found it wasn't material. It wouldn't have made it because Bertuglia, who was the engagement partner, said that the misconduct had no impact on the opinion. He relied, again, this is sort of resolving a fact question on this sort of self-serving comment by Bertuglia, that he found that it wouldn't have mattered. And the reason why the court should not have accepted Bertuglia's self-serving statement is his own involvement, which the SEC found to be unreasonable conduct, and also that the SEC found... How do we usually determine, with respect to outside auditors, these issues of materiality? I think it's the same. It's whether or not it would have had an impact on the reasonable investor. And here, investors certainly rely on the independent auditors as sort of a watchdog for... So what besides Bertuglia's statement, what allegation, what is in the record, that would tell me that this, in fact, was material to investors? I mean, I don't disagree with you that it's a little odd to rely on an insider for an assessment of materiality. But what else is there? Well, the rest is just the... Just given that there were, in fact, several gap violations, eight of them, two of them material, and findings that the systems of internal control suffered material weaknesses, all of which BDO overlooked, that there's an inference that these multiple violations would have had an impact. And investors rely on sort of the imprimatur of the... No, but Slav, we've got these materiality requirements for a reason. And so what you're saying is it's a form of res ipsa lucratur, so that can't be, right? So the fact of a violation by itself, in the mine run of cases, isn't sufficient to demonstrate materiality. So what is it more specifically that you've got? And if it's some legal principle that is out there, let me know that, too. I think what we alleged at, I think it's paragraph 624 and 625, is this is the public function, the public watchdog function of accountants that are independent of the client, and that this would have an impact on reasonable investors. If I could briefly talk about the other BDO claim, which is the failure to withdraw or correct the auditor opinion. And again, this sort of goes to this notion that defendants argue Petrula did not need to withdraw or correct it because he determined that there was nothing wrong after they finally completed the audit, that there was no reason to go back and correct it because it would have had no impact. But again, he authorized release of the opinion without reviewing the work. He signed over 2,000 work papers, and he didn't follow what defendants say, the SEC said he followed, which is this AU 390, in terms of looking to see whether or not the mistakes had an impact. The SEC said, and this is at paragraph 612, JA 244, that Petrula failed to properly assess whether or not it had an impact, including the failure to review the admitted work, discuss the assessment of admitted procedures, and to document this so-called assessment that there were basically no harm, no foul. And would you have to show loss causation and cantor for that? I don't know the answer to that. I don't believe so. I believe it's just the under Overton, but the four factors are whether the statement of the opinion is false, whether they subsequently learned or are reckless in not learning, whether it was false, they know or should know, potential investors are relying on the opinion, and Ford must take reasonable steps to correct the opinion. But it's a claim under the Exchange Act, right? It's not under some freestanding? Correct. So yes, in terms of loss causation, I think we argued that once the Wall Street Journal article came out, which sort of exposed BDO's wrongdoing, the stock price dropped precipitously, and that's the causal connection to the loss. And when was that in time in relation to the failure to withdraw the euro legend? When was the moment you're saying withdrawal should have happened? Well, the Wall Street Journal article came out in 2017, so the stock remained inflated because this was not disclosed until that time. But when should they have withdrawn this opinion? They should have withdrawn it weeks after the opinion was released, or at least in the months when Virginia learned, supposedly learned that the opinion was filled with deficiencies. Okay. Well, you've reserved some time for rebuttal, Mr. Lutz, so we'll hear from Mr. Perino. Good morning. May it please the court, Steve Perino on behalf of the AmTrust dependents. Before I get started, I want to focus specifically on Judge Kovner. You pointed out whether the rule had or had not changed. Of course, the court may take judicial notice of the rule. It's the basis for the plaintiff's allegation. And the rule is ASC 2525-5. And on the face of the rule, it has changed. It specifically says in paragraph B, subparagraph superseded by accounting standards update number 2009-13. So on the face of the rule that is incorporated by reference in the complaint, that is the basis for their claim, the rule is different. And Judge Kaplan pointed that out, that the plaintiffs had not alleged that the factual circumstances surrounding the businesses were the same after those years. And the plaintiffs had not alleged, and it turns out they cannot allege, that the rule was the same because the rule, in fact, changed. And the Warrant Act disclosure is also in the record. That's at paragraph, I'm sorry, it's at J8683. And that makes clear that the controlling portion of the rule relating to Warrant Act is, in fact, that portion of the rule that is specifically superseded as reflected in the ASC codification. The district court, in this case, properly applied this court's holding in FATE and the Supreme Court's holding in Omnicare in determining that after three amended complaints, the plaintiffs had failed to state a viable claim under the securities laws. The court applying this court's holding in FATE reasoned that accounting determinations that require the application... Would you address the lack of any reliance on past historical evidence? Would you address that argument, please? Sure. As Judge Kaplan pointed out in his opinion, there actually are more than one potentially controlling rules that were identified both by the defendants, but also in the actual disclosures relating to the restatement. So one of them does relate to the exception within the provision that the plaintiffs are relying upon, and I will address that. But it also relates to the multi-element arrangement accounting standard, which is also addressed by Judge Kaplan in his opinion. And it's addressed twice in the disclosures by the defendants related to the restatement. It was also addressed, by the way, in the Warrant Act disclosure that I just referred to. And the multi-element arrangement is significant here because it would dictate a different rule for revenue recognition of a portion of the revenues that are associated with the agreements. The disclosure that was the disclosure in every single year about the accounting treatment appears on page 7 of our brief. It's JA82. So that's your interpretation of this sort of standalone value provision. Is that right? Well, the idea is if you have an arrangement that generates multiple sources of revenue, and in this case, there was revenue generated from the customers, whereby AmTrust provided warranty coverage for a period of years. But AmTrust was also providing certain services to the retailers associated with those programs, and this is all disclosed transparently. What's the authority for this particular interpretation, this standalone value interpretation in the context of multi-element arrangements? Is there some accounting authority for this? Sure. Is that something you've cited? Yes, it's ASC 605-25-25, which is the portion of the section entitled Revenue Recognition Multiple Element Arrangements. And we discussed that starting on page 7 of our brief. It's actually also addressed in the amended complaint in paragraph 128. But that's the rule that had changed. And what it says is if you have different revenue streams and you're capable of separating the revenue streams, you apply the revenue recognition criteria that applies to each of the separate revenue streams. At the time of the restatement, was that AmTrust's rationale? Yes. In other words, that the administrative services had some form of standalone value, and that explained or justified the different accounting treatment? In both of the press releases leading up to the restatement, the company explained that the error, and we acknowledge that there was an error, but that the error related to multi-element arrangement accounting. And it dealt with this specific provision dealing with the administrative services portion. So not the actual warranty coverage. No, no, I understand. But yes, it was, and that's in the record. Both of those press releases are in the record. And that was the disclosure of the error by the company. And it specifically said, and also repeated that in a press conference, but specifically said that that was the source of the error. And the plaintiffs have no basis to speak to that. Why was that an error of opinion? I mean, so it seems like you guys acknowledged we were wrong to treat these as separate revenue streams. Why was that an opinion judgment rather than an error of fact? Well, the issue is you have to decide whether or not the revenue streams are truly separable and are separate units of accounting. And that requires the application of subjective judgment. If you look at the rule and you look at the disclosure, it's not a matter of objective fact that they either are or are not separate units of accounting. It requires judgment. Are the administrative services truly separable from the warranty obligation? Is there something – I mean, you're citing the rule. I understand that. But is there some other interpretation? Is the SEC or the PCAOB? Has anybody actually said you can have – you can interpret the rule in this way? Well, the codification is fairly detailed, and it is the provision that we cite, and it has multiple elements to it. But, yes, it does say that if you have multiple deliverables and you can separate them into separate units of accounting, then what it literally says is that you apply the revenue recognition rules that are applicable to each separate unit of accounting. And that's what the company did. But, yes, this is all in the standards, and the standards are the basis for the claim, and the court may take judicial notice of what the standards say. And it's not black and white. You can't look at it and say there's an objectively correct answer as to whether administrative services revenue received from the retailers for administering their programs is or is not separable from the revenue that's being generated from the actual warranty coverage that's being provided to the customers. All right. There was a restatement here. The fact that a restatement occurred simply means that the original opinion was incorrect. It doesn't mean anything more than that. In Omnicare, the original opinion, which was a legal opinion, was incorrect, and it was incorrect at the time that it was disclosed by the issuer. That didn't matter. In FATE, the allegation was that the opinion was incorrect. And ultimately, in FATE, Regions Bank modified all of their financial statements and ultimately took a write-down of $7.1 billion that impacted the bottom line in earnings per share for Regions Bank. The fact that an opinion is incorrect or proves to be incorrect does not mean it's not an opinion. In every securities case, the starting point is at least an allegation that a prior statement was incorrect. So the question is, and again, we're at the motion to dismiss stage. If there was an allegation that AmTrust here did not rely on historical evidence, for example, and obviously got it wrong as admitted or acknowledged in the restatement, is that an opinion? Well, then we're stuck, at least on this issue, with a fact not subject really to judgment. You can argue, I take it, that in retrospect, we had choices and it could have been a judgment call, but I'm not sure that I see anything here with respect to this issue that AmTrust actually relied on in terms of historical evidence. Well, it cannot be the case that it is sufficient to convert a statement of opinion into a statement of fact by alleging that it was wrong or even that it was clearly wrong, because that's true in every single case. In every single case, the plaintiff alleges that. The plaintiff alleged that in Omnicare. I'm asking actually about the premise. You say that it's an opinion, and my question is, if some statement is not subject really to a judgment call at the time that it was made, how can that be an opinion? Why isn't that really a statement of fact? It cannot be a conclusory allegation of that. There has to be a well-pleaded allegation from which one could infer that this was an objective standard and there was no subjectivity. Judge Kaplan, in painstaking detail for every one of these alleged misstatements, examined the controlling rules and determined correctly that they required the application of subjective judgment. It's not sufficient for the plaintiffs to simply say the opposite, because the plaintiffs can always say the opposite. And the only thing that they say to support their allegation that there was no historical evidence is the fact that the restatement actually occurred. So they say, and it's a bootstrap argument, that if they had the historical evidence, then there wouldn't have needed to have been a restatement. But that's just arguing that the fact that there was a restatement means that it wasn't an opinion in the first place, and Judge Kaplan properly rejected that argument. Can I ask one question? I'm not sure if it's your arguing friend who I should ask it to, but is there an order of operations issue with the standing argument? That is, Judge Kaplan didn't pass on the standing argument. I take it, do we have to pass on that argument because it's a preliminary question? I think I should probably defer to my co-defendants counsel on the standing. Why don't you take that? Sure, thank you. So the standing issue with respect to the underwriters relates to the Section 12 claims, and those require that in order to state a claim, the plaintiff has to plead that it purchased the security directly from a seller. Under the statute, it's not sufficient to say I bought from a seller's seller. I understand the argument. I guess all I'm trying to figure out is, do we have to address that argument? Or if we were to affirm Judge Kaplan's decision for the other reasons that are set out, can we bypass that argument? I'm wondering if standing is a threshold question we have to address. Sure. No, it's not a threshold question because the dismissal that Judge Kaplan had was on the merits of the claim, which would supersede any standing issue. So it's not a threshold. I mean, you could take it up, obviously, in that order, but if there's a failure to state a claim on the merits, then you don't need to address the standing issue. Because it's a statutory standing issue? Exactly. Your Honor, may I just follow up very briefly on one point? Sure, go ahead. I gave your friend a little bit more time. Thank you, Your Honor. So Judge Kaplan correctly found that Rule 9b applies. And Rule 9b does require more than the plaintiff simply alleged, in this case in response to your question, that there was an objective standard and there was only one right answer. That isn't sufficient under Rule 9b. And Rule 9b applies. If Rule 9b weren't to apply, then the plaintiff couldn't even satisfy Prong 1 of Omnicare. Because if you disavow any averments of fraud, then you can't prove that the defendant subjectively disbelieved their opinion. May I ask you sort of a broader question? Sure. Because these issues that devolve from Omnicare are actually quite difficult in my view. And they have implications not only for civil litigation, but also for criminal prosecutions. So let's assume that we disagree. Just assume that we disagree that at least some of the statements that Judge Kaplan characterized as opinions are opinions. And we think that they are statements of fact. Can you prevail? In other words, should we then immediately vacate? Well, certainly for the 34 Act claims, the plaintiffs are required to adequately plead scienter, and they haven't done so here. And we addressed that briefly in our brief. But Judge Kaplan did not directly reach that. Although in finding that the plaintiffs had failed to adequately allege that Amtrak subjectively disbelieved its opinions, that is a cousin of scienter. I'll put it that way. So on the 34 Act claims, they still haven't adequately pleaded a claim. On the 33 Act claims, the basis upon which Judge Kaplan found that they did not have a 33 Act claim was that these two statements, which were the only material or allegedly material, allegedly false statements, those were opinions. So that was the basis for his dismissal of the 33 Act claim. I don't see how this court could find as a matter of law that these statements are not opinions. Well, that's because you rely on fate, in part, and Omnicare. Sure, yes. Okay. But if, for example, we were to limit fate to issues of goodwill and broader issues that are clearly subject to a considerable amount of judgment, and Omnicare doesn't directly address this type of case, I think, then we might well determine that these are statements of fact. I'm thinking out loud because these are very difficult issues. Well, Your Honor, if I may push back on your statement about Omnicare, I think Omnicare is actually very analogous. Omnicare involved legal judgments. So you're applying a body of rules that supposedly are clear and allow people to conform their conduct to them. And in Omnicare, the issuer made a judgment that they were complying with the anti-kickback laws, and they were wrong. And they were wrong at the time that they said it. And the court still said that's an opinion. So, I mean, it's not limited to instances where you're required to predict the future. It's where you have a complicated set of rules, and you need to apply those rules to a complicated set of facts, and it requires judgment. And if it requires judgment, it's an opinion. In every case. Yes. So let me ask you a question. The coffee is hot. Is that an opinion, or is that a statement of fact? The coffee is hot. Well, I think one could say whether something is hot, whether 100 degrees is hot, or 120 degrees is hot, or 212 degrees is hot, is subjective. But I think there are certainly more objective references that one could use to determine whether or not the coffee is hot. So if it was zero degrees, that probably would not be an objectively reasonable conclusion. If it was 212 degrees, it probably would be. But if it was 110 degrees, I think that would be a matter of judgment. Okay. All right. Thank you, Your Honor. Thank you very much. We'll hear from BDO's counsel. Thank you, Your Honor. Timothy Hoffner for BDO. Let's focus first on Section 11. Appellant does not contest the BDO audit opinions at issue or opinions on the care and fate. The essence of what we're talking about today is BDO issued opinions on financial statements supplying an interpretation of accounting standards that they believed was appropriate. As we've talked about today, it was very complicated for the reasons both sides have talked about. A new firm came in, KPMG, and they reached a different opinion on the application. We had one firm that reached one opinion, a second firm that reached a second opinion on all these elements that we've talked about. Would you agree that the BDO audit, at least based on these allegations, I know nothing besides what's in front of us, but at least based on these allegations, was a faulty audit? Stick to the Section 11 claims, if we may, because I think the critical point on that is the SEC order, which is the focus of the claims against BDO, addresses the audit of the 2013 financial statements. The Section 11 claim relates to registration statements that did not include the 2013 financial statements. The SEC order and the issues raised there is irrelevant to the Section 11 claim. Thank you for that, but would you answer my question? With respect to the audits that are included in the registration statement, the answer is no, and that was not part of the SEC's order. The only allegation that they have in their complaint relating to the opinions that were included in the registration statements derives from the Wall Street Journal article, which largely focused on AmTrust. The facts there, as Judge Kaplan correctly said, referred to an unidentified individual—this is not a confidential witness as you'd have typically in a securities case—making very general statements with no connection made to the restated items in the financial statement. BDO is not alleged to have had any knowledge relating to that or ancient history about Warrant Act, so no, I think the audit issues with respect to the registration statement, I don't think that they've alleged, which is the key issue here, that there was anything beyond a difference of opinion, which led to the restatement of the financials for the reasons that we've talked about. With respect to the Section 10b claims, if I may, first of all, Judge Kovner's— The 2013 10k? Yes, the 10b claims focus on the 2013 audit, and to answer Judge Kovner's question from earlier, yes, they do have to allege loss causation, and that is what Judge Kaplan focused on in concluding that the alleged corrective disclosure that came out three and a half years after the event in 2017 did not indicate that the article was talking about the 2013 financial statement. Therefore, they failed to plead any causal link between what they say was the corrective disclosure in 2017 and the issues that were raised by the SEC, and this goes to another point that Mr. Love raised in his presentation, and this goes to the materiality issue, which is the failure to plead materiality. And what Judge Kaplan correctly focused on there is that the necessary procedures that needed to be performed were identified by the BDO partner after the opinion was released, and consistent with the auditing standards, which apply AU390, he dove down, he looked at that, and a conclusion was reached that there was no impact on the financial statements. That was addressed within a 30-day period. Nothing happened to the company within a 30-day period that raised any problems, that raised any loss that was material to shareholders. It was corrected, and they moved forward, and that's never come out as being the actual cause of a loss or the cause of a significant issue. I just want to make sure that I understand. You would agree that if there were an allegation, I guess, in the procedural context here of a drop in share price once that disclosure from BDO was made, that that might be material, but what you're saying is that there's no allegation, and in fact, it didn't happen. Nothing happened. I'm saying that there's no allegation, and that the audit partner acted consistent with the audit standards, which say that you go in and you look. If there's an impact on the financial statements, and quite correctly, Judge Kaplan focused on the fact that there was no connection between the necessary procedures that had not been completed and the restatement of the financial statements that occurred, so there was no impact on the financial statements. And again, as a matter of pleading, there's nothing in the complaint to the contrary. One just last one point here, and I know I'm in penalty time, but my… There's no such thing here, Mr. Hoffman. You've been very gracious with your time today, but the one comment that my adversary has made in his briefing he made today is the self-serving allegations. All we have is his allegations, which are based on the SEC order. There are no allegations that go beyond that, and I have a really hard time saying that statements in an SEC order against an audit partner are my self-serving statements. So I'm just looking at the pleadings. Judge Kaplan just looked at the pleadings, and I think on those grounds, we can affirm. Again, there are also the scienter issues that arise, but I think if we focus on these high-level issues as you have, I think that's appropriate for today. Thank you very much for giving me a little bit of extra time. Thank you. So just as a housekeeping matter, Mr. I don't know if it's Wiener or Weiner, you did not state your name for the record? Yes, it's Wiener. Thank you. Okay. Sorry, Wiener. Yes. All right. Mr. Love. Yes, thank you. Very briefly to address Judge Kovner's question, I apologize. In terms of the 10B claims in BDO, yes, scienter and loss causation are elements. The scienter, we discussed corporate scienter in our briefs. And as alleged, the management level, senior management and the engagement partners knew the opinion was false or at least reckless. In terms of loss causation, it was the Wall Street Journal article which came out, and even though it didn't exactly mirror the 2013 opinion, it talks about the exact same kinds of misconduct from BDO, there was a precipitous stock drop, which also goes to the materiality question, that the 2013 opinion misconduct was material, and that is shown by the stock drop. We just heard from Mr. Hoffman that there is no link between the restatement and that revised opinion. The specific issues that the SEC talked about do not parallel the accounting errors in the restatement, but there's a strong inference, at least a plausible one, that given the amount of malfeasance and misconduct, not reviewing reams and reams of documents, and then the company is required to restate its financials over a five-year period with significant material weaknesses, that it did have an impact. Did you allege that impact somewhere specifically? That inference, yes. Did you allege that there was a specific impact? Not a specific impact. Not a specific link between the specific findings that the SEC made about the specific issues that were failures of the 2013 opinion, but given those failures and the overall misconduct in the way that the opinion was conducted, that it had an impact when you look at all the gap violations that BDO missed, and the material weaknesses that BDO missed, and the fact that there was a five-year restatement that they missed. If I could turn back to the AmTrust defendants. When the Supreme Court said the coffee is hot is a statement of fact, it was because it's a statement made with certainty. It's determinative. It's in contrast to an inherently subjective, uncertain comment. And so the bottom-line income figures here, the misstated financials were expressed with certainty. The Supreme Court didn't say you look at the coffee is hot statement and then try to figure out well. Yeah. Look, I agree with you that if the statement the coffee is hot is a matter of total opinion, we've got other problems. But, you know, again, this is why this is a difficult set of issues for me at least. I want to talk, if I have a minute or two, talk about the multiple element rule, which is not a timing rule. There's one revenue recognition rule with regard to timing. That's what we allege. It's an objective rule, and that's what we allege that AmTrust failed to follow. Although there were, in their press releases ahead of the restatement, AmTrust talked about multiple elements. They omitted that. Those were preliminary assessments. They did not state that in their actual restatement when they said that their overstatement was due to recognizing revenue at the time of sale. And, again, these are fact questions, whether or not multiple element guidance was used. We detail in our reply brief on pages 9 and 10 the series of disclosures that are needed if multiple element guidance is used. And there's nothing in any of the 10 cases that mention multiple element guidance at all. These disclosures were not made. And so whether or not they actually did use multiple element guidance remains a question of fact. And I want to point the court to JA 544, which is in the AmTrust 10 case, and it identifies which accounting policies are based on subjectivity and judgment. So this allows investors to know what are the subjective rules. And this is where they talk about loan loss and goodwill. There's nothing in there about revenue recognition rules. There's nothing in there about multiple element guidance. And so with AmTrust's own documents, these are not subjective rules. If they were important subjective rules, they would be listed there. Okay. Thank you. Thank you. Thank you very much. Helpful argument. We'll reserve decision.